

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERCOM VENTURES, LLC,
an Illinois limited liability company,

    Plaintiff,

 - against-

EUROVU, SA,
a corporation of the Country of
Switzerland,

    Defendant.

Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

12 CV 3707

  Plaintiff, Intercom Ventures, LLC (Intercom), an Illinois limited liability company, by its attorneys, for its complaint against EuroVu, SA (EuroVu), a corporation of the Country of Switzerland, states as follows:

## NATURE OF THE ACTION

1. This action arises under, pursuant to, and by reason of a License Agreement between the parties dated January 31, 2011, which by its terms requires that it remain confidential; the Plaintiff seeks a declaratory judgment that (1) it properly terminated the contract and (2) that certain of its terms are unenforceable even if not properly terminated; and separately, damages for fraud and negligent false representation in the inducement by the Defendant which resulted in Intercom entering into the Agreement.

## THE PARTIES

2. Intercom Ventures, LLC, is a limited liability company organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois, and does business as an international distributor of Internet Protocol Television

(IPTV) by sending television programming over the Internet to television set-top boxes, which are owned, leased or rented by its individual or commercial customers, which subscribe to one or more of its programming packages.

3. The Defendant, EuroVu, SA, a corporation organized under the laws of the country of Switzerland (EuroVu), with its principal place of business in Sion, Switzerland, is the owner of certain rights to distribute programming of certain Polish language television stations, and which does business by licensing the programming to vendors of cable, satellite and internet protocol television.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of the this action pursuant to 28 USC 1332(a) in that there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 29 USC 1391(d) and the agreement of the parties as reflected in the License Agreement.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

6. On or about January 31, 2011, the parties entered into a License Agreement by which EuroVu, the Defendant, purported to license Intercom the right to distribute the programming of certain Polish language television channels to its customers in the United States of America; the License Agreement defined the channels as including, among others, TVP Info, a channel owned by Telewizja Polska, SA (TVP), a corporation organized under the laws of the Country of Poland.

7. The term of the License Agreement was five (5) years.

8. Neither EuroVu nor any of its officers, agents or employees, ever told Intercom that its rights to distribute any of the channels covered by the agreement would expire prior to the end of the term of the License Agreement.

9. EuroVu told Intercom that the agreements which provided it the right to distribute all of the channels mentioned in the License Agreement contained terms which required that EuroVu not show Intercom those agreements or provide Intercom with any information concerning the precise terms of those agreements.

10. In the agreement itself, at paragraph 1 thereof, EuroVu purported to grant the right to Intercom, without exception, to distribute all content of the channels referenced in the License Agreement for the entire term of the License Agreement.

11. Intercom relied upon the five year term of the grant of rights to all channels, including TVP Info, in its decision to execute the License Agreement, including the payment terms, which provided at paragraph 2 that Intercom pay a set fee for each customer that subscribed to the channels but at paragraph 2.3, provided that Intercom pay for a certain escalating minimum number of subscribers to the programming packages over the term of the License Agreement regardless of the actual number. However, without a reasonable length of the term, Intercom could not build its customer base sufficiently to justify paying the minimums.

12. On or about March 30, 2012, TVP notified Intercom directly that the rights of EuroVu to distribute TVP Info had an expiration date of April 28, 2012.

13. Intercom is also informed and believes that the rights to other channels which EuroVu purported to license to Intercom for the term of the License Agreement

will expire or be terminated prior to the end date of the term of the License Agreement.

14. On May 4, 2012, Intercom caused delivery of a Notice to EuroVu, that Intercom, pursuant to Section 16.4 of the License Agreement, had elected to terminate the License Agreement by reason of the expiration of the rights of EuroVu to distribute TVP Info, and that the Notice became effective upon receipt of the Notice.

15. EuroVu received the Notice on May 7, 2012, and pursuant to Section 16.4 of the License Agreement, termination becomes effective ninety (90) days thereafter, on August 5, 2012.

## CLAIMS AND CAUSES OF ACTION

### COUNT ONE

### DECLARATORY JUDGMENT – TERMINATION OF LICENSE AGREEMENT

16. Intercom re-alleges paragraphs 1-15 of this Complaint, as paragraph 16 of this count.

17. EuroVu had informed Intercom prior to the issuance of its Notice terminating the License Agreement that it considered Intercom to have no rights to terminate the License Agreement due to the loss by EuroVu of the right to distribute TVP Info.

18. By reason of the foregoing, a dispute exists between Intercom and EuroVu as to their rights and obligations under the License Agreement, specifically the right of Intercom to terminate the License Agreement due to the inability of EuroVu to supply TVP Info for distribution after April 28, 2012.

## COUNT TWO

### DECLARATORY JUDGMENT (in the alternative) – CONSTRUCTION OF LICENSE AGREEMENT

19. Intercom re-alleges paragraphs 1-15 of this Complaint, as paragraph 19 of this count.

20. The License Agreement, at paragraph 17.13 thereof, purports to grant a right to EuroVu to exercise certain warrants to purchase preferred stock of Intercom.

21. Intercom is not a corporation, has not issued to stock of any kind, preferred or otherwise, and has no authority under the laws of the State of Illinois, where it is organized to issue stock or warrants of any kind.

22. Under Illinois law, a limited liability company is owned by its members, and the membership interest of individual members may be assignable by members, but no member agreed to transfer any of his, her or its interest to EuroVu at any time, and a limited liability company may not assign a membership interest or any rights therein, as the members and not the company own those interests.

23. Prior to the execution of the License Agreement, Intercom advised EuroVu that it was a limited liability company organized under the laws of the State of Illinois, and that it did not have nor did it wish to issue any warrants or stock.

24. EuroVu has attempted to force a valuation of Intercom for the purpose of exercising warrants for preferred stock that it claims to hold.

25. Intercom has refused to allow a valuation for that or any other purpose.

26. By reason of the foregoing, a dispute exists between Intercom and EuroVu as to the rights and obligations under the License Agreement, specifically the claimed ownership of EuroVu of warrants and the right of EuroVu to exercise any claim under paragraph 17.13 of the License Agreement.

## COUNT THREE

## DAMAGES FOR NEGLIGENT REPRESENTATION

27. Intercom re-alleges paragraphs 1-15 of this Complaint, as paragraph 27 of this count.

28. EuroVu represented to Intercom that EuroVu had the right to distribute all the channels mentioned in the License Agreement for the entire term of the License Agreement.

29. The representation was material, in that Intercom needed the five year term of the License Agreement to receive a benefit from the License Agreement, for at the time of the execution of the License Agreement, Intercom lacked the customer base to support the minimum payments required by paragraph 2.3 of the License Agreement, which escalated over the term of the License Agreement, and unless Intercom had the term of the License Agreement to build its customer base to a sufficient level to make the distribution of the channels by it profitable, the minimum payments that it had agreed to pay, made no economic sense for it.

30. EuroVu knew that Intercom lacked the customer base to support the minimum payments at the time of the execution of the License Agreement, and it knew that Intercom needed a relatively long-term to promote the channels to make distribution of the channels profitable for Intercom, and it made the representations as to the term of its rights to all of the channels being at least coextensive with the term of the License Agreement with the intent that Intercom rely on that representation.

31. EuroVu knew that it lacked the rights for TVP Info and other channels for the term of the License Agreement when it made the representations, but it made

those representations negligently and with disregard of its knowledge that Intercom would rely on the representations.

32. Intercom reasonably relied on the representations by EuroVu that it held the rights to all of the channels, including TVP Info, for at least the term of the License Agreement.

33. By reason of that reliance, Intercom paid EuroVu based on the minimum payments required under paragraph 2.3 of the License Agreement rather than the per subscriber fee set forth in paragraph 2.1.

34. As a direct and proximate result thereof, Intercom paid fees to EuroVu which exceeded the per subscriber charge by the sum of $142,520.00.

## COUNT FOUR

## DAMAGES FOR FRAUD IN THE INDUCEMENT

35. Intercom re-alleges paragraphs 1-15 of this Complaint, as paragraph 35 of this count.

36. EuroVu represented to Intercom that EuroVu had the right to distribute all the channels mentioned in the License Agreement for the entire term of the License Agreement.

37. The representation was material, in that Intercom needed the five year term of the License Agreement to receive a benefit from the License Agreement, for at the time of the execution of the License Agreement, Intercom lacked the customer base to support the minimum payments required by paragraph 2.3 of the License Agreement, which escalated over the term of the License Agreement, and unless Intercom had the term of the License Agreement to build its customer base to a

sufficient level to make the distribution of the channels by it profitable the minimum payments that it had agreed to make, made no economic sense for it.

38. EuroVu knew that Intercom lacked the customer base to support the minimum payments at the time of the execution of the License Agreement, and it knew that Intercom needed a relatively long-term to promote the channels to make distribution of the channels profitable for Intercom, and it made the representations as to the term of its rights to all of the channels being at least coextensive with the term of the License Agreement with the intent that Intercom rely on that representation.

39. EuroVu knew that it lacked the rights for TVP Info and other channels for the term of the License Agreement when it made the representations, but it made those representations with the intention that Intercom would rely on the representations to its detriment.

40. Intercom reasonably relied on representations by EuroVu that it held the rights to all of the channels, including TVP Info, for at least the term of the License Agreement.

41. By reason of that reliance, Intercom paid EuroVu based on the minimum payments required under paragraph 2.3 of the License Agreement rather than the per subscriber fee set forth in paragraph 2.1.

42. As a direct and proximate result thereof, Intercom paid fees to EuroVu which exceeded the per subscriber charge by the sum of $142,520.00.

43. Malice is the gist of this action, which entitles Intercom to an award of punitive damages.

**As to all Counts:**

Such other, further or different relief as the Court deems proper, together with its costs of suit.

Dated: Chicago, Illinois
May 8, 2012

*Charles J. Kleiner* (signature)
Charles J. Kleiner (CJK-1232)
One University Plaza, Suite 412
Hackensack, NJ 07601
(201) 441-9616

S/ *Richard E. Steck* (signature)
Richard E. Steck (RES-2198)
19 South LaSalle St., Suite 1500
Chicago, Illinois 60603
(312) 236-4200

Attorneys for Plaintiff, Intercom Ventures, LLC

WHEREFORE, Intercom Ventures, LLC, prays for the following relief;

**As to Count One:**

a. An order declaring the rights and obligations of the parties;

b. An order finding that Intercom Ventures, LLC, properly terminated the License Agreement with EuroVu, SA, pursuant to the Notice issued by Intercom to EuroVu pursuant to Section 16.4 of the License Agreement.

**As to Count Two:**

a. An order declaring the rights and obligations of the parties;

b. An order finding that EuroVu holds no warrants of any kind with respect to Intercom Ventures and that EuroVu is not entitled to any rights under paragraph 17.13 of the License Agreement;

c. Alternatively, that the termination of the License Agreement by notice issued May 4, 2012, and received by EuroVu on May 7, 2012, terminated any rights of EuroVu pursuant to paragraph 17.13 of the License Agreement.

**As to Count Three:**

For judgment against EuroVu, SA, in the sum of $142,520.00, together with an award of its costs herein.

**As to Count Four:**

For judgment against EuroVu, SA, in the sum of $142,520.00 for compensatory damages, and in the sum of $300,000.00 for punitive damages, together with an award of its costs herein; and